IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSIE MARLENE ODOM WARD, as | ) | |
| Personal Representative for the Estate of | ) | |
| EVERETTE L. ODOM, Deceased | ) | MDL DOCKET NO.:  875 |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO.:  5:09-cv-80030 |
| | ) | |
| vs. | ) | Hon. Eduardo C. Robreno |
| | ) | |
| ALLIS-CHAMBERS PUMPS, INC., et al., | ) | **Hearing Requested** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
UNITED STATES FIDELITY AND GUARANTY COMPANY**

COMES NOW Defendant United States Fidelity and Guaranty Company
("USF&G"), by and through its attorneys Simpson Thacher & Bartlett LLP and Stradley Ronon
Stevens & Young, LLP, and for its Memorandum in Support of its Motion, pursuant to Federal
Rule of Civil Procedure § 12(b)(6), for an order dismissing with prejudice the claims in the
Complaint for the above-captioned action with respect to USF&G for failure to state a claim
upon which relief can be granted, and respectfully requesting that oral argument be granted
regarding this motion, states as follows:

<u>PRELIMINARY STATEMENT</u>

In an effort to find new litigation targets, Plaintiff added USF&G to her
Complaint seeking to hold USF&G, an insurance company, liable for failing to warn Plaintiff's
decedent and presumably others of the hazards of asbestos.  As a matter of law, USF&G did not,
and cannot owe any legally cognizable duty to Plaintiff's decedent.  To impose such a duty
would be contrary to established law and improper for a host of reasons.  As a workers'

1

compensation and general liability insurer, USF&G owed duties to its *insured*. Holding that insurers owe duties to their insureds while simultaneously owing potentially conflicting duties to third parties to warn such parties about the alleged hazards of the insured's operations or to require the insured to institute safety measures wherever they conduct business would place insurers in an untenable position and have numerous unintended consequences. While courts have consistently precluded claims against insurers when brought by third parties such as employees of the insured, *see, e.g.*, *Fackelman v. LAC d'Amiante du Quebec, LTEE*, 942 A.2d 127 (N.J. Super. Ct. App. Div. 2008), here, the relationship between USF&G and the Plaintiff's decedent is even more attenuated. Specifically, the Complaint alleges that USF&G provided workers' compensation and general liability insurance to a South Carolina-based company that in turn performed work at a Florida facility of another company at which the Plaintiff's decedent was employed.

Since August 2006, this Court has been confronted with nearly 100,000 asbestos-related filings, comprising millions of individual claims. *See* MDL 875 Casewide Statistical Breakdown (available at http://www.paed.uscourts.gov/mdl875.asp). If insurers are held to owe duties to individual claimants directly, the implications for this Court would be profound. Each and every defendant in each action likely has insurance coverage from multiple workers' compensation and general liability insurers. Indeed, insurers such as USF&G already shoulder a substantial portion of the burden of asbestos litigation based on their insurance contracts. To impose additional liability on insurers directly would not only exacerbate an already overburdened court system, it would have numerous additional adverse consequences as discussed further below. For sound reasons, courts have consistently rejected such direct action claims against insurers.

In her Amended Complaint, Plaintiff, the personal representative of the estate of

Everette L. Odom, alleges that the decedent was exposed to products containing asbestos while working as a maintenance mechanic at the Monsanto Chemical Company in Pensacola, Florida. *See* First Amended Complaint ("Compl") ¶ 3.  In addition to suing Monsanto as the premises owner, Plaintiff has sued numerous contractors, distributors, manufactures and others alleged to have caused or contributed to Odom's asbestos-related disease.[1]  Plaintiff does not allege that USF&G ever manufactured, sold or distributed any asbestos-containing product.  Nor does Plaintiff allege that USF&G owned any premises upon which decedent was allegedly exposed to asbestos, that Plaintiff or decedent has any direct contractual relationship with USF&G, or that USF&G's insured even had any employment relationship with the Plaintiff's decedent.

Instead, Plaintiff seeks to impose liability on USF&G based on its role as a workers' compensation and general liability insurer to Daniel Construction Company a/k/a/ Daniel International ("Daniel"), which was one of the contractors alleged to have performed services at the facility where decedent worked and is also a defendant in this action.  *See* Complaint ("Compl."), Count VI, at ¶¶ 87, 92.  Specifically, Plaintiff asserts two causes of action against USF&G.  First, Plaintiff alleges that USF&G breached the workers' compensation policies and general liability policies and related loss control, underwriting and/or safety inspection services that USF&G allegedly issued or provided to Daniel on the theory that decedent was a third-party beneficiary of those contracts.  *Id.,* Count VI, at ¶¶ 98-104.  In

---

[1]    Mr. Odom originally filed a complaint in Florida state court on January 14, 1991, for alleged asbestos-related disease against nearly two dozen manufacturers, distributors and others.  USF&G was not named as a defendant in that action, which was voluntarily dismissed on September 24, 2007.  Plaintiff moved to amend on August 22, 2008, and filed a purported amended complaint on April 1, 2009, for the first time naming USF&G as a defendant.  *See* Defendant E.I. Du Pont Nemours and Company's Notice of Removal at 3-4 and Ex. A.  On March 17, 2010, this Court entered a Stipulation and Order extending USF&G's time to respond to the Amended Complaint to April 2, 2010 and staying all discovery as to USF&G.  [Docket No. 8].

addition, apparently recognizing that an insurer does not owe any legally cognizable duty to third party claimants who are employed by the insurer's insured (much less to the employees of an unrelated third party), Plaintiff alleges that USF&G nonetheless voluntarily undertook a duty to provide for the safety of decedent and that USF&G negligently performed this voluntary undertaking by failing to warn decedent—and presumably the public at large—about the hazards of asbestos. *Id.*, Count VII, at ¶¶ 112-114.

Plaintiff's Complaint against USF&G should be dismissed.  As a matter of basic tort and contract law, and for reasons of sound public policy, the claims fail.  First, Plaintiff's claim for "Breach of Contract" fails for lack of privity and lack of any special relationship between USF&G and Plaintiff.  Plaintiff does not allege any facts that create any possible grounds for a breach of contract action.  As a matter of governing Florida law,[2] in order to bring suit as a third party beneficiary to a contract, a plaintiff must have been the primary and directly intended beneficiary of the contract.  As the allegations in Plaintiff's own Complaint reveal, neither the Plaintiff nor her decedent—an employee of a company at which USF&G's insured performed services—were the primary and directly intended beneficiary of the insurance contracts between USF&G and its insured, Daniel.

Second, Plaintiff's negligence claim against USF&G also fails as a matter of law because an insurer such as USF&G does not owe any legally cognizable duty to third parties

---

[2]     Plaintiff's original and Amended Complaints were brought in Florida state court.  The action was removed to the United States District Court for the Northern District of Florida on June 10, 2009, and thereafter transferred to this Court.  Consequently, for purposes of this Motion, the Court should apply Florida law.  *In re Asbestos Prod. Liab. Litig.* (No. VI), 2009 WL 2031772 at *1 n.1 (E.D. Pa. July 10, 2009) ("[I]n a Multidistrict Litigation, as to matters of state law, the Court is bound to apply the state law of the transferor forum.") (internal quotations omitted); *see also In re Silicone Gel Breast Implants Prods. Liab. Litig.,* 887 F.Supp. 1455, 1457 (N.D. Ala. 1995) ("In federal multidistrict proceedings, the transferee court applies the substantive law of the transferor.").

4

except in narrow circumstances not relevant here.  Even when such claims are brought by

employees of the insured, courts have recognized that an insurer does not owe a duty to such

parties.  To subject workers' compensation and employers' general liability carriers to potential

liability would be contrary to Florida law and public policy.  Ff a workers' compensation or

general liability insurer could be subjected to liability in lawsuits by indirect, third-party

claimants directly in a tort action, that would discourage insurers from providing safety-related

services, make it difficult to assess the risks of coverage and thereby set premiums, and

ultimately adversely impact the availability and cost of insurance.  Florida courts have

recognized that to impose potential third party liability on the part of insurers for engaging in

such activities would be contrary to public policy.

Finally, Plaintiff's Complaint is also deficient as it is not in compliance with

Florida's Asbestos and Silica Compensation Fairness Act (Fla. Stat. Ann. §§ 774.001-774.209)

(West 2009) ("Asbestos and Silica Act"), which requires that in any asbestos case filed on or

after July 1, 2005, the plaintiff must include a sworn information form containing certain

information about its claim.  Plaintiff's Complaint does not meet with these minimum threshold

requirements.

In short, Plaintiff's claims are defective for a multitude of independent reasons,

and the Complaint should be dismissed with prejudice.

## ARGUMENT

I. **PLAINTIFF'S BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NO CONTRACTUAL RELATIONSHIP WITH USF&G AND PLAINTIFF IS NOT AN INTENDED THIRD PARTY BENEFICIARY OF DANIEL'S INSURANCE CONTRACTS**

Plaintiff's breach of contract claim against USF&G should be dismissed because

Plaintiff has not alleged any direct contractual relationship existed between Plaintiff or the

decedent and USF&G, nor has Plaintiff sufficiently stated a claim under a third-party beneficiary

theory.  Plaintiff alleges that USF&G was under a contractual obligation to perform certain services for its insured, Daniel, and that, "[a]s part of providing … worker's compensation and general liability coverages" to Daniel, USF&G "was aware and had actual knowledge that employees of Daniel would be working with and around asbestos-containing materials."  Compl. at 93.  Further, Plaintiff alleges that USF&G "had actual knowledge … of the hazards associated with asbestos exposure and the risk that asbestos exposure posed to individuals working with or around asbestos-containing materials" and that USF&G breached a duty to Plaintiff, a non-Daniel employee, by failing to perform various "services" with reasonable care.  Compl. at 91 and 101.  Plaintiff further alleges that USF&G, pursuant to an alleged contract by which USF&G was to "provide information and warnings to Daniels' [sic] management, employees, and others on the job site regarding hazardous and/or dangerous conditions," Compl. at 98, and that, accordingly, USF&G "regularly and recurrently conducted loss control, underwriting, safety consulting, and/or safety inspection services at Daniel worksites, including at worksites where Plaintiff'[s] decedent was exposed to asbestos."  Compl. at 89.

Under Florida law, "[u]nless a person is a party to a contract, that person may not sue—or, for that matter, be sued —for breach of that contract where the non-party has received only an incidental or consequential benefit of the contract."  *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004).  A party may bring an action as a third-party beneficiary only where the non-party is specifically the intended third-party beneficiary of the contract.  *Id.*  It is not sufficient to allege that the non-party was an incidental beneficiary of the contract or even that one of the parties specifically intended the contract to benefit a third party.  *Id.*  Rather, a third party may bring a cause of action as a third-party beneficiary only when it is "the clear or manifest intent of the [original] contracting parties that the contract *primarily* and *directly* benefit the third party."  *Found. Health v. Westside EKG Assocs.*, 944 So.

2d 188, 195 (Fla. 2006) (emphasis added); *see also Morgan Stanley*, 873 So. 2d at 403; *Caretta*

*Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. Dist. Ct. App.

1994).  These principles have been reaffirmed repeatedly by Florida courts.  *See, e.g.*, *Taylor*

*Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 543-44 (Fla. Dist. Ct. App.

2003) ("third party may sue under a contract as an intended third party beneficiary *only if the*

*parties express, or the contract clearly expresses*, the intention to primarily and directly benefit

the third party.") (emphasis added); *Jim Macon Bldg. Contractors, Inc. v. Lake County*, 763 So.

2d 1223 (Fla. Dist. Ct. App. 2000) (no third party beneficiaries to a letter of credit); *Deanna*

*Const. Co., Inc. v. Sarasota Entm't Corp.*, 563 So. 2d 150 (Fla. Dist. Ct. App. 1990) (contractor

not a third party beneficiary of a lease that required a tenant to make improvements); *In re Gov't*

*Complex Case, Consol.*, 543 So. 2d 866 (Fla. Dist. Ct. App. 1989) (subcontractor not a third

party beneficiary of a prime contract between an owner and the contractor); *Clearwater Key*

*Ass'n-S. Beach, Inc. v. Thacker*, 431 So. 2d 641, 645 (Fla. Dist. Ct. App. 1983) (condominium

owners not third-party beneficiaries of a management agreement entered into between a

condominium association and its management company); *see also Hirshenson v. Spaccio*, 800

So. 2d 670, 673 (Fla. Dist. Ct. App. 2001) ("The right of an intended, third party beneficiary to

sue under a contract is recognized only if the parties clearly express, or the contract itself

expresses, an intent to primarily and directly benefit the third party."); *Caretta  Trucking*, 647

So. 2d at 1031 ("A party is an intended beneficiary *only if the parties to the contract clearly*

*express, or the contract expresses*, an intent to primarily and directly benefit the third party … in

order to find the requisite intent, it must be shown that *both* contracting parties intended to

benefit the third party.") (emphasis added).

      Here, Plaintiff's Amended Complaint relies on the assertion that USF&G

contracted to provide "loss control, underwriting and/or safety inspection services for Daniel," its

insured.  *See* Compl. ¶ 87.  Plaintiff contends that USF&G was providing workers' compensation and general liability coverage to Daniel and that "[a]s part of providing these workers compensation and general liability coverages, Defendant [USF&G] was aware and had actual knowledge that employees of Daniel would be working with and around asbestos-containing materials." *Id*. ¶ 93.  Plaintiff further contends that USF&G should have provided warnings to Daniel, to Daniel's employees and to other third parties of asbestos-related dangers that are alleged to have existed on the Monsanto premises where Daniel was allegedly a contractor.  *Id*. ¶ 95-98.

Even taking these allegations as true for purposes of the instant motion, they are clearly insufficient to state a claim under Florida law.  Nowhere does the Complaint assert that Daniel and USF&G clearly manifested any intent that the purpose of their alleged contract was primarily and directly to benefit third parties such as employees of third parties who may come into contact with Daniel employees.  To the contrary, the allegations in the Amended Complaint assert that the loss control, underwriting and/or safety inspection services that USF&G allegedly provided were provided for *Daniel*, its insured.  Even if employees of Daniel or other third parties who in turn came into contact with Daniel employees were incidental beneficiaries of the services USF&G is alleged to have provided to Daniel, this would be insufficient to state a claim under Florida law.  Florida courts have not hesitated to dismiss claims for breach of contract under a third-party beneficiary theory where the allegations of the Complaint fail to allege with particularity that the contract was specifically intended by both contracting parties to benefit the plaintiff primarily and directly.  *See, e.g., Caretta Trucking*, 647 So. 2d at 1031-32 (absent well pleaded allegation that the parties to the contract expressly intended that the contract would primarily and directly benefit plaintiff, third-party beneficiary claim should be dismissed);

*Bozeman v. Hernando County*, 548 So. 2d 300 (Fla. Dist. Ct. App. 1989) (dismissal warranted where complaint alleged that plaintiff was an incidental beneficiary of contract).

The closest Plaintiff comes to pleading the requisite elements is her conclusory assertion that "Plaintiff's decedent was an intended beneficiary of the contract between Defendant [USF&G] and Daniel." Compl. ¶ 99. Even taken at face value, this assertion is insufficient because it does not state that the alleged contract was (1) specifically intended by both contracting parties, (2) to benefit the plaintiff primarily, and (3) directly. *Cf. Morgan Stanley*, 873 So. 2d at 403 ("To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party.").

Moreover, Plaintiff's assertion *cannot* be taken at face value. As the Third Circuit recently made clear, after *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949). Moreover, pleadings containing "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, courts must separate the factual and legal elements of a claim and disregard any legal conclusions. The court must determine whether the facts actually pled show that the plaintiff is entitled to relief. *Id.*, 210-11. Thus, the assertion that Plaintiff's decedent was an intended beneficiary of the contract is not only insufficient on its face under governing Florida law, it is also nothing more than a conclusory assertion unsupported by any assertion of fact. As such, it should be disregarded.

Moreover, Plaintiff's assertion is inconsistent with the facts that have been pled, inconsistent with the nature of the insurance relationship, and inconsistent with basic principles of tort law.  By definition, "loss control, underwriting and/or safety inspection services" or any other services allegedly provided in connection with Daniel's workers' compensation or general liability coverage were provided for the direct and primary benefit of Daniel, not third parties who might come into contact with employees of Daniel at premises throughout the country. Moreover, for reasons discussed further below, as an insurer, USF&G owed duties to its insured, for example, to pay and defend covered claims as required under the terms and conditions of the insurance contracts and pursuant to applicable Florida law, to maintain confidentiality concerning its insured, and to comply with the requirements of applicable state law governing the handling and payment of claims (such as the Workers' Compensation Law).  Failure to exercise such duties to its insured could expose an insurer to liability to the insured, including bad faith liability.  *See, e.g., Berges v. Infinity Ins. Co*., 896 So. 2d 665 (Fla. 2004) (insurer, in handling the defense of claims against its insured, has a duty to act in good faith and with regard for the interests of its insured or risk bad faith liability to insured).  If accepted, Plaintiff's claims would impose duties on insurers that would be potentially irreconcilable with duties insurers owe to their insureds.  For instance, Plaintiff contends that USF&G should have issued warnings directly to third parties about the alleged hazards associated with Daniel's activities, yet as Daniel's insurer, USF&G could be called upon to defend Daniel against claims asserted by those very same individuals or risk liability to Daniel.

In addition, Plaintiff has not asserted any facts that suggest that USF&G had any ability to control what type of warnings Daniel would provide to third parties, or that it could have required Daniel to implement any particular safety measures that could have been recommended by USF&G.  Plaintiff suggests that USF&G contracted to ensure that decedent's

employer maintained a reasonably safe workplace.  Yet, USF&G is not alleged to have any

relationship with the decedent's employer.  As decedent's employer, it was Monsanto's

nondelegable duty to provide decedent with a reasonably safe workplace.  *See Clarke v.*

*Laborers' Intern. Union of N. Am., AFL-CIO*, 916 F.2d 1539, 1542 (11th Cir. 1990) ("the

common law duty to provide a safe workplace falls on the employer"); *see also Kennedy v.*

*Moree,* 650 So. 2d 1102, 1107 (Fla. Dist. Ct. App. 1995) ("Providing a safe place to work is the

essence of the employer's responsibility to its employees ...").

      While these issues are directly relevant to the question of whether USF&G owed

a legally cognizable duty to Plaintiff's decedent, they also demonstrate that it would be

unreasonable to infer that USF&G and Daniel intended primarily and directly to benefit third

parties such as the decedent, rather than Daniel, in connection with the parties' insurance

relationship.  Because Plaintiff is neither a party to the alleged contracts between Daniel and

USF&G nor a third party beneficiary to these contracts for whose direct and primary intent these

contracts were created, Plaintiff's claim for breach of contract is fatally defective and should be

dismissed with prejudice.

## II.   PLAINTIFF'S REMAINING CLAIM FOR NEGLIGENCE SHOULD BE DISMISSED BECAUSE DEFENDANT USF&G OWES NO COGNIZABLE DUTY TO PLAINTIFF

      Presumably recognizing the absence of any contractual relationship between

Plaintiff and USF&G and the absence of any legally cognizable duty owed by USF&G, in Count

VII, Plaintiff contends that USF&G voluntarily undertook a duty to provide loss control,

underwriting and/or safety-related inspection services for Daniel.  Plaintiff asserts that USF&G

was negligent in performing this voluntary undertaking in that USF&G failed to institute a

comprehensive safety program in connection with Daniel's work at the Monstanto facility; that

USF&G failed to warn individuals at Daniel job sites of the hazards of asbestos exposure; failed

to provide such individuals a safe place to work; failed to adequately test the air at such facilities; failed to provide such individuals with information about safety measures; otherwise failed "to publish, adopt and enforce a safety plan" at such facilities; and generally failed to ensure plaintiff's safety.  *See* Compl. ¶¶107-14; 112(a)-(l).

        At bottom, Plaintiff's claim is based on the notion that since USF&G allegedly performed "loss control, underwriting, safety consulting and/or safety inspection services" for Daniel, its insured, then USF&G thereby should be deemed to have voluntarily assumed a duty to the Plaintiff's decedent and presumably to other third parties.  Other than by asserting that USF&G engaged in such activities for Daniel, however, *see* Compl. ¶ 109, the Complaint is silent as to how USF&G supposedly voluntarily assumed such a duty.  Whether or not USF&G owed such a duty to Plaintiff or the decedent is a question of law for this Court.  *Aime v. State Farm Mut. Ins. Co*., 739 So.2d 110, 112 (Fla. Dist. Ct. App. 1999) ("[I]n a negligence action, the existence of a duty is a question of law to be determined by the court."); *Westchester Exxon v. Valdes*, 524 So.2d 452, 455 (Fla. Dist. Ct. App. 1988) ("Whether a duty exists is a question of law for the court.  If no reasonable duty was abrogated, as a matter of law, no negligence [can] be found.") (internal quotations omitted); *Riedel v. Sheraton Bal Harbour Assoc*., 806 So.2d 530, 532 (Fla. Dist. Ct. App. 2001) ("The existence of a legal duty is not a question for the jury, but rather a question of law for the court"); *Robert-Blier v. Statewide Enters., Inc*., 890 So.2d 522, 523 (Fla. Dist. Ct. App. 2005) ("A threshold issue in negligence is whether defendant owed any duty to the plaintiff.  It is a question of law whether any duty in tort exists.") (citation omitted).

        The mere fact that an insurer performs loss-control or similar services for its insured does not mean that the insurer thereby assumes a duty directly to third parties.  As noted above, to imply such a duty would put insurers in the impossible position of potentially owing simultaneous and potentially conflicting duties to their insureds (*e.g*., to defend against covered

claims by third-party claimants) and to the third parties themselves.  Additionally, imposing such

duties would also make it nearly impossible for insurers and their insureds to engage in

underwriting or loss control activities without thereby exposing the insurer to additional liability.

The process of underwriting is designed to enable insurers to assess their policyholders'

businesses and the associated risks.  It is this process that enables insurers and insureds to agree

on premiums and the scope of coverage.  If insurers were now required to disclose information to

the public about their insureds' business or products or demand that the insured institute various

safety programs or risk subjecting themselves to their own liability to third parties directly, the

underwriting process could not function properly.  The purpose of liability insurance is to

transfer the financial risk of loss to an insurer arising from an insured's alleged breach of duty to

third parties, subject to the terms and conditions of the insurance contract.  The insurance

relationship cannot be a basis for transferring the duty itself to the insurer.

Moreover, to impose liability on an insurer for engaging in loss control activities

would discourage insurers from engaging in such activities.  Florida has a strong public policy in

favor of encouraging insurers to engage in loss control and safety-related activities.  For

example, under Florida's Workers' Compensation Law, insurers and other third parties are

provided broad immunity for assisting in furnishing safety inspections or and engaging in similar

activities incidental to the insurer's workers compensation coverage:

> An employer's workers' compensation carrier . . . or safety consultant
> shall not be liable as a third-party tortfeasor to employees of the employer
> . . . for assisting the employer . . . in carrying out the employer's rights and
> responsibilities under this chapter by furnishing any safety inspection,
> safety consultative service, or other safety service incidental to the
> workers' compensation or employers' liability coverage or to the workers'
> compensation or employer's liability servicing contract.

Fla. Stat. Ann. § 440.11(3) (West 2009).  Florida has provided such immunity in order "to

encourage employing expert service companies to inspect and advise concerning safety for

employees," and to "reward[] efforts of safety consultants." *Greene v. Ivaco Indus., Ltd.*, 334 So. 2d 347, 348-49 (Fla. Dist. Ct. App. 1976) (quotations omitted).   These courts have recognized that to impose "[p]otential third party liability on the part of such service companies would operate as … a deterrent to their employment because fees or charges for their services would necessarily have to take into account the greater risk" of additional liability.  *Allen v. Employers Serv. Corp.*, 243 So. 2d 454, 456 (Fla. Dist. Ct. App. 1971).

Even apart from the immunity for safety-related services, workers' compensation immunity is generally extended to insurers in Florida.  *Marshall v. Amerisys, Inc.*, 943 So. 2d 276, 279 (Fla. Dist. Ct. App. 2006) ("Florida's workers' compensation legislation … immunize[s] an insurance carrier for mere negligent conduct…"); *see also Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007); *Bowman v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 261 So. 2d 821, 821-822 (Fla. 1972); *Erhard v. Hartford Acc. and Indem. Co.*, 2008 WL 203583 at *4 (S.D. Fla. January 23, 2008) ("[a]llowing an injured worker to sue [a workers' compensation insurer] as a third party beneficiary for anything other than worker's compensation benefits … would be an end run around Florida's statutory scheme.").   In this regard, Florida law is in accord with the overwhelming majority of courts in other jurisdictions, which have similarly recognized that insurers should be immune from claims relating to workplace safety.  Courts have recognized that "the adverse consequences of a contrary conclusion in light of the purposes and policies underlying the entire statutory scheme of workers' compensation.  Those consequences include … the abandonment of many safety programs currently undertaken by workers' compensation carriers … to the detriment of employees and employers alike." *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1334 (8th Cir. 1985); *see also Burns v. State Comp. Ins. Fund*, 265 Cal. App. 2d 98, 102-103 (Ct. App. 1968) ("It may be reasonably concluded that absent such immunity compensation carriers might strike

the provisions for inspection from their policies and the working conditions then left to the

inexpert administration of employers would generally deteriorate.") (discussing the

constitutionality of a statute granting immunity to insurance rating organizations).[3]

---

[3]   *See Johnson v. Amer. Mut. Liab. Ins. Co.*, 559 F.2d 382, 388-90 (5th Cir. 1977) (examining
the Alabama statute); *Kifer*, 777 F.2d at 1332-33 (examining the Arkansas statute); *Burkett
v. PPG Industries, Inc.*, 740 S.W.2d 621, 624-626 (Ark. 1987) (same); *Burns*, 265 Cal.
App. 2d at 101-02 (examining the California statute); *Bartolotta v. Liberty Mut. Ins. Co.*,
411 F.2d 115, 118-19 (2d Cir. 1969) (examining the Connecticut statute); *Young v. O.A.
Newton & Son Co.*, 477 A.2d 1071, 1075-76 (Del. Super. Ct. 1984) (examining the
Delaware statute); *Mull v. Aetna Cas. & Sur. Co.*, 172 S.E.2d 147, 148 (Ga. 1969)
(examining the Georgia statute); *Leroy v. Hartford Steam Boiler Inspection & Ins. Co.,* 695
F. Supp. 1120, 1125 (D. Kan. 1988) (examining the Kansas statute); *Donohue v. Maryland
Cas. Co.*, 248 F. Supp. 588, 591-92 (D. Md. 1965), *aff'd*, 363 F.2d 442 (4th Cir. 1966)
(examining the Maryland statute); *Matthews v. Liberty Mut. Ins. Co.*, 238 N.E.2d 348, 350-
51 (Mass. 1968) (examining the Massachusetts statute); *Kotarski v. Aetna Cas. & Sur. Co.*,
244 F. Supp. 547, 556-57 (E.D. Mich. 1965), *aff'd*, 372 F.2d 95 (6th Cir. 1967) (examining
the Michigan statute); *Smith v. Liberty Mut. Ins. Co.*, 449 F. Supp. 928, 934 (D.N.C. 1978),
*aff'd*, 598 F.2d 616 (4th Cir. 1979) (examining the North Carolina statute); *Clark v.
Employers Mut. of Wausau*, 297 F. Supp. 286 (E.D. Pa. 1969) (examining the
Pennsylvania statute); *Brown v. Travelers Ins. Co.*, 254 A.2d 27, 31 (Pa. 1969) (same);
*Mustapha v. Liberty Mut. Ins. Co.*, 268 F. Supp. 890, 893-94 (D.R.I. 1967), *aff'd*, 387 F.2d
631 (1st Cir. 1967) (examining the Rhode Island statute); *Ancrum v. U.S. Fidelity & Guar.
Co.*, 389 S.E.2d 645, 646 (S.C. 1989); (examining the South Carolina statute); *Williams v.
U.S. Fidelity & Guar. Co.*, 358 F.2d 799, 800-01 (4th Cir. 1966) (examining the Virginia
statute).   Workplace inspections and surveys, such as those alleged in the Complaint, are
directly related to the insurer's function as a compensation carrier and are barred by those
states' workers' compensation statutes.  *See Kifer*, 777 F.2d at 1338-39 (concluding that
"safety inspections in the present case were made by [defendant] in its capacity as a
workers' compensation carrier"); *Bartolotta v. Liberty Mut. Ins. Co.*, 411 F.2d at 119
(holding that an insurer conducting workplace inspections, "was plainly acting within the
scope of its ordinary function as insurer.  Insurers commonly inspect."); *Brown v.
Travelers Ins. Co.*, 254 A.2d at 31 (Pa. 1969) (holding that the compensation statute barred
claims against a carrier where the claim was based on a carrier's alleged negligent
inspection); *Burns*, 265 Cal. App. 2d at 101 n.2 (finding that safety inspections were
"inextricably interwoven" with a carrier's status as insurer, thus fulfilling one of the
"principal purposes" of the workmen's compensation system).  *See also Johnson*, 559 F.2d
at 386-87 (insurer's periodic inspections of insured's premises are an integral part of its
function as compensation carrier under relevant workmen's compensation statute);
*Williams*, 358 F.2d at 802 (same); *Sterley v. Employers Ins. of Wausau*, No. Civ. A. 95-
2130, 1996 WL 417163, *4 (E.D. Pa. July 18, 1996), *aff'd* 116 F.3d 469 (3rd Cir.1997)
(same); *McHargue v. Stokes Div. of Pennwalt Corp*., 649 F. Supp. 1388, 1393 (D. Colo.
1986) (same); *Kotarski*, 244 F. Supp. at 558 (same); *Mergenthaler v. Asbestos Corp. of
Amer., Inc*., 534 A.2d 281, 284 (Del. Super. Ct. 1987) (same).

The language of Florida's immunity statute precludes claims against insurers as alleged third-party tortfeasors to claims by "employees of the employer," *i.e.*, employees of Daniel. Although Plaintiff's decedent was not an employee of Daniel, but rather was an employee of Monsanto who claims to have worked in the vicinity of Daniel employees, Compl. ¶¶ 3, 62, this only further emphasizes that the decedent was even further removed from USF&G and the unreasonableness of imposing a duty on the insurer. If an employee of a company cannot sue its employer's workers' compensation carrier under Florida law for engaging in allegedly negligent safety-related activities, it would be completely illogical to permit those even further removed to bring such claims. To allow such claims would discourage workers' compensation insurers from engaging in safety-related activities to the same extent suits by the insured's employees would do so. Moreover, even in the absence of statutory immunity, Florida courts, as a matter of common law, have held that "[e]very encouragement, rather than deterrent, should be held out to employers so as to increase the safety of employees while tending commensurately to reduce the overall costs of the entire workmen's compensation program." *Allen*, 243 So. 2d at 456. For these reasons, it would be improper to conclude that USF&G owed a duty to Plaintiff's decedent, merely on the basis that it was alleged to have provided loss control and similar services to Daniel.

Plaintiff's claims are similar to the claims recently rejected in *Fackelman v. LAC d'Amiante du Quebec, LTEE*, 942 A.2d 127 (N.J. Super. Ct. App. Div. 2008). In that case, a plaintiff brought a direct action against a workers' compensation insurer for asbestos-related injuries, contending that the insurer assumed a duty and contracted to provide its insured with information, dust studies, inspections, recommendations, warnings, safety-related services and to provide safe working conditions for the insured's employees. *Id.*, 128-29. The court rejected these claims, finding that there was no basis to hold an insurer liable to third party asbestos

claimants directly, whether on a theory that the insurer voluntarily assumed such a duty, *id*. at 131-134, or under ordinary principles of tort liability, *id*. at 485-87, or under a third-party beneficiary theory, *id*. at 133-135. *Accord*, *Daraio v. Carey Canada, Inc*. 309 F. Supp. 2d 706 (E.D. Pa. 2004) (same).

Yet another defect in Plaintiff's claim is the absence of any suggestion that USF&G had any ability "to institute the comprehensive safety program" or to issue the warnings that Plaintiff contends was required, or that USF&G otherwise had the ability to provide third parties such as the decedent with safe working conditions. USF&G was not the premises owner, nor was it a contractor. It was an insurer of a contractor that was alleged to have performed work on the premises. As noted above, while Plaintiff contends that USF&G failed "to provide Plaintiff's decedent with a safe place to work through its failure to maintain the ambient and environmental conditions of the [Monsanto] plant in a proper and safe manner," Compl. at 112(d), it was the decedent's employer, Monsanto, that owed a non-delegable duty to provide a reasonably safe workplace to the decedent. *See Clarke*, 916 F.2d 1539 ("the common law duty to provide a safe workplace falls on the employer"); *Kennedy,* 650 So. 2d at 1107 ("Providing a safe place to work is the essence of the employer's responsibility to its employees."). Indeed, Plaintiff herself contends that "Monsanto had a duty to have the construction, maintenance and renovation work performed in a reasonably safe manner and a duty not to expose plant employees and others in the vicinity of this work to known or reasonably knowable dangerous conditions which were substantially certain to cause injury." Compl. at 46.

Florida tort law generally does not extend liability to a party for an injury caused by *another* party's product or premises. "[E]very theory of products liability … from that of negligent manufacture … through breach of implied warranty … is based on the essential requirement that the responsible party is in the business of and gains profits from distributing or

disposing of the 'product' in question through the stream of commerce." *Johnson v. Supro Corp.*, 498 So. 2d 528, 528-529 (Fla. Dist. Ct. App. 1986) (citations omitted); *see also Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354, 1375 (S.D. Fla. 2008) (under Florida law, an airline and airport were not proper party defendants in a product liability action to recover for injuries sustained as a result of an allegedly defective escalator in the airport, where neither manufactured the escalator, not were either involved in its chain of distribution).

Here, USF&G did not manufacture, sell or install any product alleged to cause the injuries at issue here, nor was USF&G the owner of the premises that allegedly failed to provide the Plaintiff's decedent with a safe workplace. Likewise, USF&G was not the decedent's employer and had no other relationship with the decedent. Under these circumstances, and particularly in the absence of any factual allegation to support Plaintiff's claim that USF&G voluntarily assumed a duty to Plaintiff, or that USF&G even had the ability to impose the sort of safety precautions that Plaintiff contends was required at the facility where he worked, there is no basis for imposing any duty on USF&G as a matter of law and thus the negligence claim should be dismissed.

## III.   THE COMPLAINT FAILS TO COMPLY WITH THE ASBESTOS AND SILICA COMPENSATION FAIRNESS ACT

Plaintiff's Complaint is not in compliance with Florida's Asbestos and Silica Compensation Fairness Act, and is therefore deficient. In any asbestos case filed on or after July 1, 2005, the Asbestos and Silica Act requires plaintiffs to include with their complaints at the time of filing a "sworn information form" containing certain types of information specified in Section 774.205(3). Plaintiff's Complaint does not meet with these requirements.

Specifically, Section 774.205(3) of the Asbestos and Silica Act requires that plaintiffs file with their complaints a form that must include, among other information, the "beginning and ending dates of each alleged exposure as to each asbestos product or silica

product for each location at which exposure allegedly took place for the plaintiff ...."  Section

774.203(d).  The information attached to Plaintiff's Complaint does not state, with any kind of

specificity, "the beginning and ending dates of each alleged exposure as to each … product for

each location at which exposure allegedly took place."  In fact, it does not address beginning and

ending dates of exposure for any of the 17 alleged exposures at all.  *See* Compl. Exhibit A, at

Para. V.  Rather, the Complaint merely states that decedent was "exposed to asbestos fibers from

1954 until approximately 1981."  Compl. Exhibit A, at Para. IV.[4]

       The Asbestos and Silica Act requires a more specific statement for each alleged

exposure.  As such, Plaintiff's Complaint fails to state a cause of action because it fails to

comply with the minimum threshold requirements of the Asbestos and Silica Act.  The failure to

file a sworn information form that complies with the dictates of the Asbestos and Silica Act

mandates dismissal of the Complaint until Plaintiff complies with this section of the Act.

## IV.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

       Plaintiff has failed to adequately plead any valid claims against USF&G.  As a

matter of law, each of Plaintiff's claims—and the Complaint itself—is defective for the reasons

outlined above.  Accordingly, USF&G respectfully submits that Plaintiff's Complaint should be

dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  A court must

grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to

Rule 12(b)(6) if the complaint does not state "enough facts to state a claim to relief that is

plausible on its face."  *Twombly*, 550 U.S. at 570.  Here, it is readily apparent that Plaintiff

---

[4]    While it may be true that decedent "has given depositions in the Florida Asbestos litigation where he identified his work history and asbestos exposure in detail," this fact on its face does not supplant the plain language requirements of Section 773.205(3) of Florida's Asbestos and Silica Compensation Fairness Act.  Moreover, USF&G was not a defendant in any prior action brought by or on behalf of the decedent and thus had no opportunity to participate in the deposition.

cannot prove any set of facts that would entitle her to recovery.  The principal defect in

Plaintiff's claims is the absence of any duty to Plaintiff.  That defect cannot be cured by

repleading.  Consequently, the Complaint should be dismissed with prejudice. [5]

## **CONCLUSION**

For the above reasons, USF&G respectfully requests that its motion be granted

and that the Complaint be dismissed with prejudice in its entirety as against USF&G.  USG&G

---

[5]    In addition to the above reasons for dismissing Plaintiff's claims against USF&G, all
claims alleging punitive damages against USF&G must be dismissed.  Pursuant to the
Florida Asbestos and Silica Compensation Fairness Act, punitive damages are not
available.  Fla. Stat. Ann. § 774.207 (West 2009) ("[p]unitive damages may not be
awarded in any civil action alleging an asbestos or silica claim"). In addition, while
Plaintiff's Complaint repeatedly states that Plaintiff's decedent "suffered physical and
mental pain and suffering" due to his alleged exposure to asbestos, *see, e.g.,* Compl. at 31,
39, all such statements should be dismissed by this Court.

Further, damages for decedent's pain and suffering are not recoverable under Florida law.
Fla. Stat. Ann. § 768.21(6)(a) (West 2009); *Martin v. United Sec. Servs., Inc.*, 314 So. 2d
765, 769 (Fla. 1975) (discussing the elimination of claims for pain and suffering of a
decedent from Florida's Wrongful Death Act).

Finally, although the Complaint alleges general negligence and strict liability claims, these
claims do not appear to be directed at USF&G.  To the extent that the negligence claim is
directed toward USF&G, it fails for a lack of duty, as is discussed in Part II of this Motion.
Insofar as Plaintiff's strict liability claims apply to all Defendants, USF&G is immune, as
under Florida law an action for strict liability may only be brought against "manufacturers,
as well as to others in the distribution chain, including retailers, wholesalers, distributors,
and, most recently, commercial lessors." *Ugaz*, 576 F. Supp. 2d at 1375.

respectfully requests that oral argument be granted regarding this motion.

Dated:  April 2, 2010

          /s/ Andrew T. Frankel
          By:  ANDREW T. FRANKEL

          SIMPSON THACHER & BARTLETT LLP
          425 Lexington Avenue
          New York, New York  10017
          (212) 455-2000

          Samuel J. Arena, Jr., Esquire
          s/ Julia M. Rafferty, Esquire
          STRADLEY RONON STEVENS & YOUNG LLP
          2600 One Commerce Square
          2005 Market Street
          Philadelphia, PA 19103
          (215) 564-8000

          Attorneys for Defendant USF&G Indemnity
          Company